## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JOSEPH COEN** *et al.,* | : | |
| *Plaintiffs* | : | **CIVIL ACTION** |
| | : | |
| **v.** | : | |
| | : | |
| **UNITED STATES OF AMERICA,** *et al.,* | : | **No. 21-4636** |
| *Defendants* | : | |

## MEMORANDUM

PRATTER, J.                                                        APRIL 29, 2022

Joseph Coen filed negligence claims against the Navy and its contractors after a one-ton panel fell on him while he was working at a Navy site. The Navy argues that the independent contractor exception and the discretionary function exception under the Federal Tort Claims Act (FTCA) bar Mr. Coen's claims and a related crossclaim. But unlike most subject matter jurisdiction disputes under the FTCA's independent contractor exception, Mr. Coen alleges that a Navy rigger, not a contractor, placed the panel that fell on him. However, looking at the discretionary function exception, Mr. Coen does raise claims related to the Navy's hiring, firing and supervision decisions that fall under that exception. Therefore, the Court grants the Navy's motion to dismiss for lack of subject matter jurisdiction in part as to the claims related to hiring, training and supervision, and denies the rest of the motion.

### BACKGROUND

Mr. Coen alleges that on August 28, 2019, he was delivering fuel to a crane operated by a Navy Yard contractor in Philadelphia when a metal panel weighing over one ton crashed down on his right leg, causing severe injuries. According to Mr. Coen, employees of the U.S. Navy were responsible for securing the metal panel that fell on him and the panel was not properly secured. He alleges that the U.S. Navy controlled access to the site and allowed him to enter the site without an escort.

1

Based on initial discovery, the Navy asserts that workers from a contractor working at the site, Pietro Carnaghi USA, Inc., cut the packaging surrounding a package of panels and remove other panels, leaving the one unsecured panel that fell on Mr. Coen.[1]

Mr. Coen asserts claims for negligence against Pietro Carnaghi, the crane company (Bay Crane Service of New Jersey, Inc.), and the U.S. Navy, all under the FTCA. His wife, Nicole Bourgeois, also asserts a claim for loss of consortium. Pietro Carnaghi and Bay Crane Service filed a crossclaim against the Navy, blaming the Navy for the plaintiffs' claimed damages. The Navy moves to dismiss all claims against it for lack of subject matter jurisdiction.

## LEGAL STANDARDS

A motion to dismiss for lack of subject matter jurisdiction is governed by Federal Rule of Civil Procedure 12(b)(1). When presented with a Rule 12(b)(1) motion, the plaintiff bears the burden of proof to show that jurisdiction does in fact exist. *Davis v. Wells Fargo*, 824 F.3d 333, 349 (3d Cir. 2016).

There are two types of Rule 12(b)(1) motions. A "facial" attack under this Rule assumes that the allegations of the complaint are true, but contends that the pleadings fail to present a claim within the court's jurisdiction. *Const. Party of Pa. v. Aichele*, 757 F.3d 347, 358 (3d Cir. 2014). A Rule 12(b)(1) "factual" attack, on the other hand, argues that "there is no subject matter jurisdiction because the facts of the case . . . do not support the asserted jurisdiction." *GBForefront, L.P. v. Forefront Mgmt. Grp., LLC*, 888 F.3d 29, 35 (3d Cir. 2018) (quoting *Const. Party of Pa.*, 757 F.3d at 358). In evaluating a factual attack, the plaintiff's "claims receive no presumption of truthfulness," and the Court is free to consider evidence outside the pleadings and weigh that evidence. *Const. Party of Pa.*, 757 F.3d at 358. But "where jurisdiction is intertwined with the

---

[1] The Navy provided this information in a supplemental memorandum on April 27, 2022. *See* Doc. No. 23, at 4.

merits of an FTCA claim, . . . a district court must take care not to reach the merits of a case when deciding a Rule 12(b)(1) motion." *CNA v. United States*, 535 F.3d 132, 144 (3d Cir. 2008).

The FTCA vests exclusive jurisdiction in federal district courts for claims against the United States "caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act occurred." 28 U.S.C. § 1346(b)(1). Although the default rule is that the United States has sovereign immunity from suit, the FTCA waives that immunity for tort lawsuits. The FTCA, in turn, contains exceptions that reestablish the presumption of sovereign immunity.

DISCUSSION

The Navy challenges this Court's subject matter jurisdiction through a factual attack. On this basis, the Court may consider information outside the pleadings. The Navy argues that two exceptions to the waiver of sovereign immunity in the FTCA apply to Mr. Coen's claims and the crossclaim: the independent contractor exception and the discretionary function exception.

I.     **The Independent Contractor Exception Does Not Apply**

First, the Navy argues that the independent contractor exception to the FTCA bars this lawsuit. The term "employee of the government" is defined by statute to include employees of "any federal agency," including the "military departments," but "any contractor with the United States" is excluded from the statutory definition. 28 U.S.C. § 2671. Thus, to state it more directly, "the United States is not liable for injuries caused by the negligence of its independent contractor[s]." *Jackson v. Liberty Mut. Ins. Co.*, 282 F. App'x 150, 151 (3d Cir. 2008) (citing *Norman v. United States*, 111 F.3d 356, 357 (3d Cir. 1997)). "Broad governmental oversight is not sufficient to elevate a government vendor or service provider from independent contractor to

employee status for the purpose of the FTCA." *Dalessio v. U.S. Dep't of Hous. & Urb. Dev.*, 528 F. Supp. 3d 341, 347 (E.D. Pa. 2021) (internal quotation marks omitted).

The Navy correctly argues that it cannot be held liable for the actions of a contractor that has "broad responsibilities for daily maintenance." *Norman*, 111 F.3d at 357. In *Norman*, the contract language stated that "Government direction or supervision of contractor's employees directly or indirectly, shall not be exercised." *Norman*, 111 F.3d at 358. The Court of Appeals considered this disclaimer of government supervision a "critical factor" to distinguish a federal employee from an independent contractor. *Id.* To support its factual attack on jurisdiction, the Navy introduces its contract with Pietro Carnaghi and asserts that "courts in the Third Circuit have repeatedly dismissed cases under the independent contractor exception, without additional discovery, based upon the language of a contract between the government and the contractor." *Woods v. Sec'y of Hous. & Urb. Dev.*, No. 17-cv-1903, 2017 WL 4621690, at *5 (E.D. Pa. Oct. 16, 2017).

But these arguments do not apply under the facts of this particular case. Mr. Coen does not merely rely on the Navy's "broad responsibilities for daily maintenance" or "broad governmental oversight" to establish the Navy's liability. Instead, he alleges that a Navy rigger moved the panel and left it unsecured.[2] Cross-claimant Pietro Carnaghi has also introduced the signed affidavit of its installation supervisor, Daniel Rangel, who states that the panel was placed by Navy riggers.[3] The Navy responded to the Rangel affidavit by representing that discovery has revealed that the panel was placed by a Navy rigger as part of a package of multiple panels, which

---

[2] Mr. Coen also argues that the Navy's failure to provide a security escort for him as he moved about the site provides another basis for direct liability. The Court does not reach this argument because the alleged involvement by the Navy rigger independently establishes subject matter jurisdiction.

[3] Pietro Carnaghi and Bay Crane's jointly-filed crossclaim incorporates the allegations of the Complaint to the extent they are "proven true and correct at trial," Doc. No. 7, at ECF 14, so the Court does not analyze the crossclaim separately for purposes of this motion.

Pietro Carnaghi workers then cut and removed other panels from, leaving the one remaining panel that later fell on Mr. Coen.

The Navy does not dispute that a Navy employee was the person who placed the panel that fell on Mr. Coen. Instead, the Navy argues that the Navy rigger would have placed the panel under the supervision of Pietro Carnaghi under the following terms of the Contract:

> § 3.9.6 Facilities. . . . The receiving activity [*i.e.*, the Navy] will also make available the services of . . . riggers to offload the machine and set [it] into place under the direction of the contractor's field supervisor.

Doc. No. 11-1, at 46, § 3.9.6. But the Navy's argument inverts the independent contractor exception. The Navy argues that *contractor* supervision of the *government's* employees invokes the independent contractor exception.[4] Under the Navy's theory, a federal government employee acting under the supervision of an independent contractor is subject to the independent contractor exception to federal tort liability. The Navy could effectively turn all of its employees into independent contractors by hiring an independent contractor to supervise them in some fashion. The Navy cites no case law to support this novel theory. Accepting this theory would also defeat the purpose of the independent contractor exception, which is to limit the FTCA waiver of sovereign immunity to only the acts of government employees. *See Berkman v. United States*, 957

---

[4] The Navy also provides a landlord-tenant analogy: if (1) a landlord (the Navy) helped a tenant (Pietro Carnaghi) move heavy furniture into their apartment and then (2) the tenant failed to properly install and secure the furniture and (3) a visitor (Mr. Coen) was harmed by the furniture, any tort arising from the furniture would be the tenant's responsibility because the tenant failed to secure the furniture. According to the Navy, "[t]he landlord should not be penalized for simply providing some muscle to move the furniture at the tenant's direction, especially where a contract makes clear that the tenant is the party responsible for safety in his apartment." Doc. No. 14, at 7.

But this analogy misses the mark because the panel that fell on Mr. Coen is not analogous to a tenant's personal furniture. The panel was not Pietro Carnaghi's personal property, but rather, part of an installation project *for the Navy*. The scenario alleged by Mr. Coen would be more analogous to a landlord who agrees to make a repair and negligently leaves a repair part in the tenant's apartment. If a visitor was harmed by that repair part, there could in fact be a basis for tort liability under Pennsylvania law. *Cf. Klais v. Guiton*, 26 A.2d 293, 294 (Pa. 1942) ("It is the law that a landlord who undertakes to repair premises leased and does so negligently and thereby causes injury to a person lawfully using them is liable to the injured party.").

F.2d 108, 112 (4th Cir. 1992) ("[T]he FTCA divides the universe of persons through which the United States may act into two general classes, 'employees of the Government' and 'contractors.' In waiving tort immunity, the federal government agrees to be fiscally responsible only when the tortious conduct is performed by government employees and not when performed by contractors.").

Additionally, the Navy leaves out other terms in its contract with Pietro Carnaghi which undermine its argument that "the contract made clear that Pietro was responsible for ensuring safety on the Worksite." Doc. No. 11, at 1. For example, § 3.9.8 requires Pietro Carnaghi to follow U.S. Navy safety practices and § 3.11 requires meetings "in conference with the [Naval Foundry and Propeller Center (NFPC)]'s safety and health manager to discuss and develop mutual understanding relative to the administration of NFPC's safety program as applicable to the performance of this contract." Ex. A, Doc. No. 11-1, at 48–52 §§ 3.9.8, 3.11. Even if the Navy could delegate all responsibility for "safety" to an independent contractor, it certainly has not done so here.

Lastly, the Navy suggests that the discovery that some of the panels were removed after placement by a Navy rigger shows intervening action that negates any Navy employee involvement. But there is no "tag, you're it!" exception to the FTCA. If the Navy wishes to argue that Mr. Coen fails to prove causation, it is welcome to do so as a party to this case in its defense against his negligence claim.

Because Mr. Coen has alleged that the negligence of a Navy employee is at issue in this case, the Court finds that the independent contractor exception does not preclude jurisdiction.

## II.     The Discretionary Function Exception Applies to a Subset of Mr. Coen's Claims

Second, the Navy argues that the discretionary function exception bars certain of Mr. Coen's claims.   Mr. Coen claims that the Navy failed to properly hire, train, and supervise its "agents, servants, workers and/or employees."  Doc. No. 1, Compl. ¶¶ 60(e), 60(g), 60(k)–(m). The Navy argues that its hiring, training, and supervision of employees are inherently discretionary functions and that Mr. Coen's claims on this basis should be dismissed under the discretionary function exception to the FTCA.

The FTCA does not waive sovereign immunity for torts that arise from "the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused."  28 U.S.C. § 2680(a).   Under the two-part test applying the discretionary function exception, courts consider (1) whether the policy or actions "involve[d] an element of judgment or choice" and (2) "whether that judgment is of the kind that the discretionary function exception was designed to shield" such as conduct "grounded in policy" or "susceptible to policy analysis." *United States v. Gaubert*, 499 U.S. 315, 322–23, 324–25 (1991) (quoting *Berkovitz v. United States*, 486 U.S. 531, 536 (1988)); *accord Baer v. United States*, 722 F.3d 168, 172 (3d Cir. 2013).

Government decisions regarding hiring, training, and supervision meet both steps of the two-step inquiry because they involve an element of choice that is susceptible to policy analysis, namely, "how best to use its limited financial and human resources."  *Merando v. United States*, 517 F.3d 160, 172 (3d Cir. 2008).   "Federal appellate courts stand in agreement that decisions relating to the hiring, training, and supervision of employees are inherently a discretionary function."  *Brown v. United States*, No. 17-cv-1551, 2018 WL 741731, at *4 (E.D. Pa. Feb. 7, 2018), *aff'd*, 823 F. App'x 97 (3d Cir. 2020).

As Mr. Coen partially conceded at oral argument,[5] the sub-paragraphs in the complaint raising theories of negligence based on the Navy's hiring, training, and supervision policies are barred by the discretionary function exception. Doc. No. 22, Mar. 24, 2022 Tr. at 17:21–25. The discretionary function exception does not, however, bar the other parts of Mr. Coen's complaint. Therefore, the Court will partially dismiss only those portions of the complaint and crossclaim related to the Navy's hiring, training, and supervision decisions.

## CONCLUSION

For the foregoing reasons, the Court will grant the Navy's motion in part, dismissing only the portions of the claims and crossclaim based on the Navy's hiring, training, and supervision decisions. An appropriate order follows.

BY THE COURT:

GENE E.K. PRATTER
UNITED STATES DISTRICT JUDGE

___

[5] Mr. Coen's counsel conceded this point at least "as it pertains to the Navy hiring Pietro Carnaghi," without identifying a relevant distinction for other forms of hiring, training, or supervision claims that could be raised by Mr. Coen's complaint (e.g., hiring the Navy's own employees). Doc. No. 21, Mar. 24, 2022 Hrg. Tr. at 17:21–25.